**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

---

| | |
|---|---|
| HALEY LANGERT, *on behalf of herself and all others similarly situated,* )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>GEORGE MASON UNIVERSITY, AND JAMES )<br>W. HAZEL, HORACE BLACKMAN, SIMMI )<br>BHULLER, ANJAN CHIMALADINNE, )<br>THOMAS M. DAVIS, JUAN CARLOS )<br>ITURREGUI, MEHMOOD S. KAZMI, WENDY )<br>MARQUEZ, IGNACIA S. MORENO, )<br>CAROLYN J. MOSS, JON M. PETERSON, )<br>NANCY GIBSON PROWITT, PAUL J. )<br>REAGAN, EDWARD H. RICE, DENISE )<br>TURNER ROTH, AND BOB WITECK, )<br>)<br>Defendants. ) | C.A. No. _____<br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

---

Plaintiff, Haley Langert ("Plaintiff"), by and through her undersigned counsel, brings this action against Defendants, George Mason University (the "University") and James W. Hazel, Horace Blackman, Simmi Bhuller, Anjan Chimaladinne, Thomas M. Davis, Juan Carlos Iturregui, Mehmood S. Kazmi, Wendy Marquez, Ignacia S. Moreno, Carolyn J. Moss, Jon M. Peterson, Nancy Gibson Prowitt, Paul J. Reagan, Edward H. Rice, Denise Turner Roth, and Bob Witeck in their official capacities as members of the Board of Visitors of the University (the "Board" or collectively with the University, "Defendants"), and alleges as follows based upon information and belief, except as to the allegations specifically pertaining to her, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This is a class action lawsuit on behalf of all persons who paid, or will pay, tuition and/or fees to attend the University[1] for an in-person, hands-on education for the Spring 2020 semester and the Summer 2020 semester, but had their course work moved to online learning by Defendants. Regarding the Spring 2020 semester, such persons paid all or part of the tuition for the semester that ranged from approximately $4,530 to $16,260; housing fees of approximately $2,825 to $5,688; and various mandatory student fees of $146 per credit hour (collectively, the "Mandatory Fees").

2. The University has not refunded any amount of the tuition or any of the Mandatory Fees, even though it has implemented online distance learning only starting on March 23, 2020. The University has also not refunded any amount of housing for those students who were unable to move out prior to March 25, 2020.

3. Due to the Defendants' response to the Coronavirus Disease 2019 ("COVID-19") pandemic, the University also stopped providing any of the services or facilities that the Mandatory Fees were intended to cover beginning around mid-March 2020.

4. The University's failure to provide the services for which tuition and the Mandatory Fees were intended to cover since approximately March 23, 2020 is a taking of private property (funds) without just compensation and is unconstitutional.

5. In short, Plaintiff and the members of the Class have paid tuition for a first-rate education and an on-campus, in-person educational experience, with all the appurtenant benefits offered by a first-rate university, but were provided a materially deficient and insufficient alternative, which constitutes a taking of property (funds) by the University. As said in New York

---

[1] Including all campus and branch locations.

Magazine, "*Universities are still in a period of consensual hallucination with each saying, 'We're going to maintain these prices for what has become, overnight, a dramatically less compelling product offering.*'"[2]

6.      As to housing, the University required that students move out prior to March 25, 2020, or forfeit the opportunity for a refund. The students who were unable to move out prior to that date should also be entitled to a refund from the date on which they did move out.

7.      As to the Mandatory Fees, Plaintiff and Class members have paid fees for services and facilities which were not provided; this failure also constitutes a taking by the University.

8.      Plaintiff seeks, for herself and Class members from all the University's campuses and branches[3], just compensation by way of the University's return of the tuition and Mandatory Fees paid, proportionate to the reduction in contracted for services provided during the time that remained in the Spring Semester 2020 where the campuses were closed and students were moved to distance/virtual learning, and the entirety of the Summer 2020 semester for any Class members who signed up and paid for on-campus classes yet were provided with only online distance learning. Plaintiff also seeks just compensation for the taking of housing fees on behalf of all students who were unable to move out prior to March 25, 2020.

9.      Plaintiff's counsel sent Freedom of Information Act (FOIA) requests to Defendants in order to, *inter alia*, gain access to the internal communications regarding the closing of the University, the provision of only online learning, and the issuance of potential refunds and reimbursements to students and the ultimate denial of same. If any of the requested information

---

[2] James D. Walsh, "The Coming Disruption," New York Magazine, May 11, 2020, available at https://nymag.com/intelligencer/2020/05/scott-galloway-future-of-college.html?utm_source=fb (site last visited June 9, 2020).

[3] The University has campuses in Fairfax, Arlington, Front Royal, and Prince William, Virginia.

bears on Plaintiff's allegations and claims, Plaintiff shall amend the Complaint to incorporate same.

## PARTIES

10. Plaintiff Haley Langert is a citizen of North Carolina. She paid to attend the Spring 2020 semester at the University's Fairfax Campus as a full-time undergraduate student. Plaintiff paid tuition, housing, and Mandatory Fees for the Spring 2020 semester to enable her to obtain an in-person on-campus education experience, live in University housing, and participate in the activities and utilize the services covered by the Mandatory Fees that she paid. She has not been provided a refund of tuition, housing, or Mandatory Fees, or just compensation for the taking of the same.

11. The University is a public university that was originally founded in 1956 as the Northern Virginia branch of the University of Virginia. The institution that is now named George Mason University opened in September 1957, becoming an independent institution in 1972.

12. Defendants James W. Hazel, Horace Blackman, Simmi Bhuller, Anjan Chimaladinne, Thomas M. Davis, Juan Carlos Iturregui, Mehmood S. Kazmi, Wendy Marquez, Ignacia S. Moreno, Carolyn J. Moss, Jon M. Peterson, Nancy Gibson Prowitt, Paul J. Reagan, Edward H. Rice, Denise Turner Roth, and Bob Witeck are sued in their official capacities as members of the Board of Visitors. The Board oversees and makes policies for the University, including that of tuition.[4]

13. The Board's principal place of business is Fairfax County, Virginia. The Board is a citizen of Virginia.

---

[4] https://bov.gmu.edu/; https://www2.gmu.edu/news/585801.

14. The University offers numerous major fields of study for undergraduate students, as well as a number of graduate programs. The University's undergraduate programs enroll students from many, if not all, of the states in the country.

15. Its principal campus is located in Fairfax County, Virginia. The University is a citizen of Virginia.

## JURISDICTION AND VENUE

16. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendants, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

17. This Court has personal jurisdiction over Defendants because Defendants maintain their principal places of business in this District.

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants reside in this District and in this Division.

## FACTS

19. Plaintiff restates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully rewritten.

20. Plaintiff and members of the Class paid, or will pay, to attend the University's Spring 2020 semester and Summer 2020 semester, including tuition, housing (if living on campus) and the Mandatory Fees.

21. The Spring 2020 semester at the University began on or about January 21, 2020. The Spring 2020 semester ended on or around May 20, 2020.[5] The Summer 2020 semester at the University began on or about June 1, 2020 and is scheduled to end on August 19, 2020.[6]

22. Tuition costs and Mandatory Fees at the University for the Spring 2020 Semester for a full-time undergraduate student were as follows:

| Undergraduate Tuition Rates | | | |
|---|---|---|---|
| Credit Hours | In State Tuition | Out of State Tuition | Mandatory Student Fee |
| 1 | $377.50 | $1,355.00 | $146 |
| 2 | $755.00 | $2,710.00 | $292 |
| 3 | $1,132.50 | $4,065.00 | $438 |
| 4 | $1,510.00 | $5,420.00 | $584 |
| 5 | $1,887.50 | $6,775.00 | $730 |
| 6 | $2,265.00 | $8,130.00 | $876 |
| 7 | $2,642.50 | $9,485.00 | $1,022 |
| 8 | $3,020.00 | $10,840.00 | $1,168 |
| 9 | $3,397.50 | $12,195.00 | $1,314 |
| 10 | $3,775.00 | $13,550.00 | $1,460 |
| 11 | $4,152.50 | $14,905.00 | $1,606 |
| 12 – 15 (Full Time) | $4,530.00 | $16,260.00 | $1,752.00 |
| Per Credit Over 15 | $377.50 | $1,355.00 | $146.00 |

[7]

23. Tuition costs at the University for the Spring 2020 Semester for a full-time graduate student ranged from approximately $506 to $1,756.25. Mandatory Fees were $146 per credit hour.[8]

24. Tuition costs and Mandatory Fees at the University for the Summer 2020 semester for a full-time undergraduate student were as follows:

---

[5] https://registrar.gmu.edu/calendars/spring-2020/.
[6] https://registrar.gmu.edu/calendars/summer-2020/.
[7] https://studentaccounts.gmu.edu/wp-content/uploads/Spring2020Undergraduate.pdf.
[8] https://studentaccounts.gmu.edu/tuition-fees/#spring.

| Undergraduate Tuition Rates ||||
| Credit Hours | In State Tuition | Out of State Tuition | Mandatory Student Fee |
| --- | --- | --- | --- |
| 1 | $377.50 | $1,355.00 | $146 |
| 2 | $755.00 | $2,710.00 | $292 |
| 3 | $1,132.50 | $4,065.00 | $438 |
| 4 | $1,510.00 | $5,420.00 | $584 |
| 5 | $1,887.50 | $6,775.00 | $730 |
| 6 | $2,265.00 | $8,130.00 | $876 |
| 7 | $2,642.50 | $9,485.00 | $1,022 |
| 8 | $3,020.00 | $10,840.00 | $1,168 |
| 9 | $3,397.50 | $12,195.00 | $1,314 |
| 10 | $3,775.00 | $13,550.00 | $1,460 |
| 11 | $4,152.50 | $14,905.00 | $1,606 |
| 12 – 15 (Full Time) | $4,530.00 | $16,260.00 | $1,752.00 |
| Per Credit Over 15 | $377.50 | $1,355.00 | $146.00 |

[9]

25.   Tuition costs at the University for the Summer 2020 semester for a full-time graduate student ranged from approximately $489 to $1,594. Mandatory Fees were $146 per credit hour.[10]

26.   Plaintiff and the members of the Class paid all or part of the applicable tuition and Mandatory Fees for the benefit of on-campus live interactive instruction and an on-campus educational experience throughout each semester, and for maintenance of facilities and buildings, auxiliary services, intercollegiate athletics, campus shuttle, academic services, student activities, and health services.

27.   Housing at the University for the Spring 2020 semester cost approximately $2,825 to $5,688. The members of the Class who lived on campus during the Spring 2020 semester paid the applicable cost for the benefit of on-campus housing throughout the entire semester.

---

[9] https://studentaccounts.gmu.edu/wp-content/uploads/Summer2020Undergraduate.pdf.
[10] https://studentaccounts.gmu.edu/tuition-fees/#summer.

28.     The University has retained the value of the tuition, housing, and Mandatory Fees, while failing to provide the services for which they were paid, or just compensation for the taking of the same.

29.     Members of the Class have demanded the return of the prorated portion of their fees, and have taken to an online petition to demand the same.[11] As University student Nuha Mokaddem put it:

> As a student, I am not asking for a special discount or something I do not deserve. Many of us have lost experiences that would be remembered for the rest of our lives and that is more than enough of a loss. I am requesting that the university refunds the students back for the services that are canceled and not used and waive the Mandatory Student Fee for the Spring and the Summer of 2020.[12]

Despite the demand from Class members, the University has not provided any refund of fees and continues to retain the monies paid by Plaintiff and the Class, which retention constitutes a taking.[13]

### *In Response to COVID-19, the University Closed Campus, Preventing Access to its Facilities and Services and Cancelled All In-Person Classes*

30.     On or about March 11, 2020, the University announced that it was extending Spring Break by one week through March 20, ceasing all face to face in-person classes immediately, and

---

[11] https://www.change.org/p/george-mason-university-gmu-partial-tuition-refund-due-to-the-covid-19?recruiter=1087234567&recruited_by_id=82c9a580-90f2-11ea-8eeb-d3dc1cf474a6&utm_source=share_petition&utm_medium=copylink&utm_campaign=petition_dashboard.

[12] *Id.*

[13] Indeed, Defendants have increased undergraduate tuition rates for the Fall 2020 semester. https://studentaccounts.gmu.edu/tuition-fees/#Fall.  According to a report recently released by the State Council of Higher Education for Virginia, eleven of Virginia's seventeen public higher education institutions did not increase tuition and other fees in 2020-21 "because of concerns about access and affordability, especially during the COVID-19 period".  https://drive.google.com/file/d/19itXtjHMWWNohfUFLSoH-hHxmizYboTM/view (p. 2). The University's percentage increase was the highest of the six institutions that did increase tuition for 2020-21.  *Id.* (p. 8).

that all classes moving forward were to be provided by remote online programs only. The University expected to use remote online education through at least April 3.

31. The March 11 announcement further cancelled all campus events for the foreseeable future, and encouraged students not to return to campus following the extended Spring Break. Specifically, University President Holton stated, "*we encourage students who are home to stay home during this time.*"

32. On or about March 13, 2020, the University announced that on-campus events were cancelled through April 10, 2020.

33. The University subsequently cancelled all in-person classes and on-campus events for the remainder of the Spring 2020 semester and Summer 2020 semester.

34. On March 18, 2020, the University announced that it would be closing residence halls and that students must move out prior to March 25, 2020 to receive a refund.

35. In tacit acknowledgment that the education provided is different, the University gave its students the option to receive a Satisfactory/No Credit grade rather than the traditional letter grade offered when classes are given in-person.

36. The University has not held any in-person classes since March 6, 2020. Classes that have continued since then have only been offered in a remote online format with no in-person instruction or interaction.

### *The University's Online Courses Are Subpar to In-Person Instruction, For Which Plaintiff and the Class Members Contracted with the University to Receive and Paid Tuition and Fees*

37. Students attending the University during the relevant time periods did not choose to attend an online institution of higher learning, but instead chose to enroll in the University's in-person educational program.

38. On its website, the University markets its on-campus experience as a benefit of enrollment, touting extensive on-campus or neighboring shopping, dining, recreation, clubs and organizations, health and wellness facilities, and other amenities:

### A Location that Sets Us Apart

Mason's prime location in Fairfax, Virginia, just 15 miles outside of Washington, D.C., gives you the best of both worlds. You'll enjoy all the benefits of living near the nation's capital, while also feeling safe and right at home at one of the largest and most beautiful residential campuses in Virginia. The city becomes your playground—you can intern with National Geographic or the Justice Department, visit museum exhibits with your Art History classmates, explore historic Georgetown and the National Mall, catch a Nationals baseball game, and even attend congressional hearings.

### Home Away from Home

Mason has quickly become one of the largest residential campuses in the Commonwealth of Virginia. Our walkable campus allows you to be close to everything, no matter where you live.

Just a few of the benefits of living on campus are:

- Comfortable residence halls with free laundry facilities
- Top-of-the-line fitness and athletic facilities
- On demand dining
- Sports and concert venues, including a 10,000-seat arena
- 350+ student clubs and organizations
- A 24-hour Starbucks.

> **OUR LOCATION**
>
> The Arlington Campus is located in the heart of one of the country's most dynamic regions and in the orbit of one of the world's great capitals. Opportunities for internships and research are unequaled. So is access to archives and museums, policy makers and think tanks, and diverse career opportunities in technology, government, and other spheres.

39.     The University uses its website, promotion materials, circulars, admission papers, and publications to tout the benefit of being on campus and the education students will receive in its facilities.

40.     The online learning options provided by the University to its students are sub-par in practically every aspect as compared to the educational experience previously afforded Plaintiff and the members of the Class.

41.     During the online portion of the Spring semester, and upon information and belief during the Summer semester, the University principally used programs by which previously recorded lectures were posted on-line for students to view on their own.  Therefore, there was a lack of classroom interaction among teachers and students and among students that is instrumental in the development of interpersonal skills.

42.     The online formats being used by the University do not require memorization or the development of strong study skills given the absence of any possibility of being called on in class and the ability to consult books and other materials when taking exams.

43. Students have been deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique.

44. Further, the ability to receive a Satisfactory/No Credit grade as compared to the in-person letter grade provides an educational leniency that demotes the motivation to learn that the students would otherwise experience.

45. Access to facilities such as libraries, laboratories, computer labs, and study rooms are also integral to a college education, as is access to the myriad activities offered by campus life which foster social development and independence, and networking for future careers. These are all substantial and material parts of the basis upon which the University can charge the tuition it charges, and they were not and are not being provided.

46. The University has not refunded any portion of the tuition Plaintiff and the members of the Class paid for the semesters for the periods it moved to subpar on-line distance learning, and has not paid any just compensation for the taking of the same.

47. Nor has the University refunded or given just compensation for the taking of any portion of the Mandatory Fees it collected from Plaintiff and the members of the Class for the semesters even though it closed or ceased operating the services and facilities for which the Mandatory Fees were intended to pay.

48. When asked if students would receive a refund for tuition and Mandatory Fees, the University stated:[14]

> **Will Mason refund a portion of my tuition and mandatory fees due to the conversion to virtual instruction?**
>
> No. Mason is committed to delivering courses through the end of the semester to keep students on track for academic progress and degree completion. We are investing substantial resources in time and technology to convert to virtual instruction to ensure you successfully finish the semester and receive the credits you've earned, as well as in associated ongoing operational support and administration. Mason continues to provide essential academic and support services to ensure continuity of our educational programs and university services. Tuition and mandatory fees ensure this support is provided and is ongoing.

---

[14] https://studentaccounts.gmu.edu/student-accounts-covid-19-faq/#COVID1

49. The University has also not provided any refund or just compensation for the taking of housing fees to students who moved out after March 25, 2020.

50. Plaintiff and the Class members are therefore entitled to just compensation for the taking of tuition and Mandatory Fees they paid for all or a portion of the Spring 2020 and Summer 2020 semesters during which classes were provided only online and facilities were closed or severely limited. Further, any students who lived on campus during the Spring 2020 semester and who moved out after the University's unilateral and strict move-out date are entitled to just compensation for the taking of housing fees that they paid for the remaining days of that semester after they left the campus.

51. Defendants are obligated to uphold the Virginia and United States Constitution.

52. By denying in-person learning and on-campus benefits and opportunities, Defendants have violated the Virginia Constitution, Article I, § 11, and the United States Constitution's Fifth and Fourteenth Amendments. Plaintiff and members of the Class are entitled to a pro-rated refund of tuition, housing, and Mandatory Fees for the duration of the University's COVID-19 related closures for the in-person education and on-campus services and opportunities that Plaintiff and members of the Class have been denied.

## CLASS ACTION ALLEGATIONS

53. Plaintiff brings this case individually and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the class defined as:

> All persons who paid tuition, housing (if living on campus), and/or the Mandatory Fees for a student to be enrolled at any undergraduate or graduate programs at a George Mason University campus during the Spring 2020 semester and/or Summer 2020 semester, but had their class(es) moved to online learning (the "Class").

54. This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

55. The requirements of Rule 23(a)(1) have been met. The Class is so numerous that joinder of all members is impracticable. Although the precise number of Class members is unknown to Plaintiff, the University has reported that approximately 37,863 students were enrolled in the 2019-2020 academic year.[15] The number of students enrolled in the Summer 2020 semester is unknown at this time. The identity of all such students is known to the University and can be identified through the University's records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

56. The requirements of Rule 23(a)(2) have been met. There are questions of law and fact common to the members of the Class including, without limitation:

   a. Whether the University accepted money from Plaintiff and the Class members in exchange for the promise to provide an in-person and on-campus live education, as well as certain facilities and services throughout the semester;

   b. Whether Defendants complied with the Constitutional requirements for seizing and retaining Plaintiff's and the Class members' property without providing the services that the tuition, housing, and Mandatory Fees were intended to cover;

   c. Whether Defendants afforded Plaintiff and the other Class members notice and due process before seizing and retaining their property; and

   d. The amount of damages and other relief to be awarded to Plaintiff and the Class members.

---

[15] https://irr2.gmu.edu/FastFacts/.

57. The requirements of Rule 23(a)(3) have been met. Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff and the other Class members each contracted with Defendants for them to provide an in-person and on-campus live education for the tuition they paid and the services and facilities for the Mandatory Fees that they paid, that the University stopped providing in mid-March.

58. The requirements of Rule 23(a)(4) have been met. Plaintiff is an adequate class representative because her interests do not conflict with the interests of the other Class members who she seeks to represent, Plaintiff has retained competent counsel who are experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously. Class members' interests will be fairly and adequately protected by Plaintiff and her counsel.

59. Class certification of Plaintiff's claims is also appropriate pursuant to Rule 23(b)(3) because the above questions of law and fact that are common to the Class predominate over questions affecting only individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. The damages or financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be required for individual litigation of their claims against the University. It would, thus, be virtually impossible for Class members, on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and

comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

## FIRST CLAIM FOR RELIEF

### VIOLATION OF THE TAKINGS CLAUSES - 42 U.S.C. § 1983
(On Behalf of Plaintiff and the Class)

60. Plaintiff repeats and re-alleges the factual allegations above, as if fully alleged herein.

61. Plaintiff brings this claim individually and on behalf of the members of the Class.

62. The Takings Clause of the Fifth Amendment provides that private property shall not "be taken for public use, without just compensation." U.S. Const. Amend. V. The Takings Clause is made applicable to the states through the Fourteenth Amendment. *See* U.S. Const. Amend. XIV; *Murr v. Wisconsin*, 137 S. Ct. 1933, 1942, 198 L. Ed. 2d 497 (2017) (citing *Chicago, B. & Q.R. Co. v. Chicago*, 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897)). Similarly, Article I, § 11 of the Virginia Constitution provides that private property shall not be taken "for public use without just compensation to the owner thereof." Virginia Const. Art. 1, § 11. Thus, the takings clauses of the U.S. and Virginia Constitutions prohibit states, and state agencies like the Board and University, from taking private property for public use without just compensation.

63. Takings claims may properly be brought against state agencies and are not barred by sovereign immunity.

64. Common law has recognized that there is a property right by an owner in funds held in an account managed by another. Here, the University received payment of tuition, housing, and Mandatory Fees from private citizens, as consideration for the benefit of receiving in-person course instruction, housing, and other on-campus benefits - the funds are thus private in nature but

held by a public entity. Plaintiff and the other members of the Class have a protected property right in all sums they paid to the University.

65. Defendants violated the takings clauses by failing to return to Plaintiff and members of the Class that portion of the tuition, housing, and Mandatory Fees for which they received nothing, or significantly less than what they bargained for in return. Neither Plaintiff nor the other Class members have made a knowing and voluntary waiver of their constitutional right under the Fifth Amendment or under the Virginia Constitution to be paid just compensation for the taking of their property rights in those funds.

66. Thus, Plaintiff and the Class are entitled to just compensation for the taking of their property.

## SECOND CLAIM FOR RELIEF

### DUE PROCESS - 42 U.S.C. § 1983
### (On Behalf of Plaintiff and the Class)

67. Plaintiff repeats and re-alleges the factual allegations set forth above as if fully alleged herein.

68. Plaintiff brings the claim individually and on behalf of the members of the Class.

69. Government actors must provide adequate due process procedures when depriving citizens of protected property interests. U.S. Const. Amend. XIV; Virginia Const. Art. I, § 11.

70. The due process clauses of the U.S. and Virginia Constitutions prohibit the State of Virginia and the governmental agencies that it creates , such as the Board and University, from depriving citizens of a protected property interest without due process of law.

71. Plaintiff and the Class members had a constitutionally protected property interest in the tuition, housing, and Mandatory Fees they paid for in-person education, housing, and on-campus services and opportunities but were denied due to the actions of the Defendants.

72. Defendants took action affecting Plaintiff and the other Class members' constitutionally protected property interests by retaining amounts from Plaintiff's and the Class members' payment of tuition, housing, and Mandatory Fees.

73. Defendants deprived Plaintiff and the other Class members of their protected property interests without due process of law by, for example:

   a. Failing to provide timely notice to Plaintiff and the Class, whose identity and contact information Defendants either knew, or by exercise or reasonable diligence should have known, of the refundable nature of the tuition, housing, and Mandatory Fees;

   b. Failing to design and implement criteria by which the tuition, housing, and Mandatory Fees can be refunded to Plaintiff and the Class in light of the University ceasing or severely limiting all on-campus in-person lectures, housing, and activities due to the COVID-19 pandemic; and

   c. Failing to design and implement a mechanism by which Plaintiff and the other Class members can obtain a refund of the tuition, housing, and Mandatory Fees in light of the University's ceasing or severely limiting all on-campus in-person lectures, housing, and activities due to the COVID-19 pandemic.

74. Defendants' failure to comply with the requirements of due process has resulted in substantial detriment to the Plaintiff and the Class.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that judgment be entered in favor of Plaintiff and the Class against Defendants as follows:

a. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

b. For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

c. For compensatory damages in an amount to be determined by the trier of fact;

d. For an order of restitution and all other forms of equitable monetary relief;

e. Awarding Plaintiff's reasonable attorneys' fees, costs, and expenses;

f. Awarding pre- and post-judgment interest on any amounts awarded; and,

g. Awarding such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on any and all issues in this action so triable.

Dated: August 17, 2020                    Respectfully Submitted,

                                                                    HALEY LANGERT

                                                                    By Counsel

_____
Charles L. Williams (VSB 23587)
WILLIAMS & SKILLING, P.C.
7104 Mechanicsville Turnpike, Suite 204
Mechanicsville, VA 23111
Telephone: 804-447-0307, ext. 305

        Facsimile:  804-447-0367
        cwilliams@williamsandskilling.com

        **CARLSON LYNCH, LLP**
        Gary F. Lynch (admitted *pro hac vice*)
        Edward W. Ciolko (admitted *pro hac vice*)
        Nicholas A. Colella
        1133 Penn Avenue, 5th Floor
        Pittsburgh, PA 15222
        Telephone: (412) 322-9243
        glynch@carlsonlynch.com
        eciolko@carlsonlynch.com
        ncolella@carlsonlynch.com

        *Counsel for Plaintiff and Proposed Class*